Yazoo & Mississippi Valley R. Co. v. R. J. Smith.

[64 South. 158.]

CARRIERS. *Carriage of passengers. Duty of carrier.*
It is the duty of the servants of a railroad company to do all they can to relieve the injury of a passenger after an accident, but this rule in its application must be controlled by the facts in each particular case and where a drunken passenger, by his negligence fell off a morning train carrying many other passengers, and his absence was not discovered until the train had proceeded several miles, it was not the duty of the conductor to back the train and hunt for him, when to do so would endanger the other passengers and when other trains following were notified to look out for him.

APPEAL from the circuit court of Amite county.
HON. E. E. BROWN, Judge.
Suit by R. J. Smith against the Yazoo & Mississippi Valley Railroad Company. From a judgment for plaintiff, defendant appeals.
The facts are fully stated in the opinion of the court.

*Mayes & Mayes,* for appellant.

Should peremptory instruction have been given?
We consider this question on the merits of this record uninfluenced by the question of whether or not the *Byrd case* in 89 Miss. has an application. Our contention is that on the facts of this case and under the laws of Louisiana, the place where this accident happened, we are clearly entitled to a peremptory instruction. We think this case is clearly distinguished from the Byrd case, and that under the laws of the state of Mississippi we are entitled to a peremptory instruction. We can be liable only for our negligence resulting in damage or injury. We did not occasion the fall. Plaintiff says that frankly. Whatever negligence we are guilty of must

be the proximate cause of the damage for which we are
sued.  If we are guilty of any negligence it consisted
in not backing up for appellee, and if we should have done
this under the circumstances and imperiled the life of
the thousand passengers that we were carrying, and did
not then, even then, we are liable for only such damage
as resulted from our failure.  What was it?  What is
shown?  It is not what might have happened from our
failure to go back, but what did happen.  The bruises
and the laceration were caused by the fall.  The night
was in April, presumably warm and clear, so no damage
happened in this way.  Appellee was not injured by any
train following, so we are not liable for what might have
happened.  We deny that we were compelled by law to
endanger the lives of the thousand passengers we were
carrying, after passing miles away before we knew any-
thing about it, and in the nighttime, and we deny that
any damage was occasioned by our failure so to do.  We
shall not attempt to controvert the general rule of the
law, that even though a passenger is guilty of negligence,
and does some act to injure himself, that this fact releases
the railroad company, in proper cases, from doing what it
reasonably can to alleviate the injury and suffering after
the accident happens.  This is the general rule controlled
in its application by the facts of each particular case,
and our contention is that the facts place this appellee
beyond help by this general rule.  The record shows that
the falling was without carelessness on our part; we ran
miles before we knew it; we used the first telegraph
wire we could use where we had an agent; we complied
with the rule by doing all we reasonably could to save
any additional harm to appellee, consistent with the rea-
sonable safe operation of our train and our duty to other
passengers on the train  and other trains following on the
track, and over and above all this, no damage is shown
to have occurred by reason of what we did or did not do.
All had happened by the fall.  In the case of *Casper* v.

*N. O. Ry. & Light Co.,* the Louisiana court holds in a suit of this kind that plaintiff must establish the injury and the negligence which caused it. See 121 La. 603. Plaintiff, in this case, wholly fails to establish any negligence on our part, in the first place, and if we should concede negligence, then plaintiff wholly fails to show any injury occasioned him by it. All the injury was sustained in the fall, invited by him when he filled up on liquor and started an insulting and rowdy attack on a fellow passenger by insulting the ladies he had under his care. In the case of *Otts* v. *Shreveport Traction Co.,* the Louisiana court again says that in actions of this character the plaintiff must make it reasonably certain that the injury was caused by the negligence of the defendant. The facts of this case make it reasonably certain that the injury was not caused by any negligence of the defendant. Plaintiff not only fails to make the proof required, but the proof offered by him proves that he has no cause of action, which is more than the law requires. See 130 La. Annual, 1051; *Dougherty* v. *R. R. Co.,* 84 Miss. 502.

If we are right in our contention that on the facts of this case a peremptory instruction should have been given for defendant, it follows that instructions numbered 1, 2, 3, and 4 are wholly erroneous. These instructions are based on the *Byrd case* in 89 Miss., which is not wholly applicable, but the facts did not warrant giving the instructions because nothing shows any want of reasonable care on part of defendant, nor can it be inferred from the facts that the railroad company failed in any reasonable duty it owed to properly care for this appellee after he fell. If it had backed this train, it might have resulted in killing him; and it certainly would have resulted in endangering the lives of the hundreds of passengers on the train.

*McKnight & McKnight,* for appellee.

If we were to take the statement set up in appellant's brief as to the condition and conduct of appellee instead

of the testimony in the record and if we ignore the fact that the jury has decided this issue in favor of appellee, still the conduct of appellee is not to be compared, for heinousness, with that of the conductor in his wilful and capricious refusal and failure to stop the train when he was first notified that appellee had fallen off and in his subsequent willful and capricious refusals and failures to stop until he got to Baton Rouge, which was twenty-eight miles from the point of the accident and was his next regular stop, as is apparent of record.

The doctrine of common humanity is announced and a violation of its demands denounced, by the supreme court of the state of Louisiana, in the case of *Conolly* v. *Railroad Co.*, 41 La. Ann. 57, which case is quoted from and approved by this court, in the case of *Weightman* v. *Railway Co.*, 70 Miss. 563; in *Railroad* v. *Sullivan*, 81 Ky. 624, also quoted from and approved in the Weightman case, above, where are also cited to the same effect: *Railroad Co.* v. *Moore,* 83 Va. 827; *Railroad Co.* v. *Weber, Admr.,* 33 Kan. 543; *Railway Co.* v. *Powell, Admr.,* 40 Ind. 37; *Haley, Admr.,* v. *Railway Co.,* 21 Iowa, 15; *Railway Co.* v. *Miller,* 19 Mich. 305; by the supreme court of Maryland in the case of *Railroad Co.* v. *State, use, etc.,* 96 Am. Dec. 545: In the case of *Dytche* v. *R. R. Co.,* 79 Miss. 361, the facts of which occurred in the state of Louisiana: And by this court, in the case of *R. R. Co.* v. *Byrd,* 89 Miss. 308.

It is respectfully submitted that the above cases established the existence of the doctrine of common humanity in the states generally, and especially in the state of Louisiana, they indicate the class of cases in which said doctrine may be invoked, they bring the instant case within that class and they establish further that such doctrine applies in a proper case, regardless of the previous condition, conduct or negligence or want of negligence of the parties, whether plaintiff or defendant, to the transaction out of, or in which the occasion for the application of said doctrine arises.

Reed, J., delivered the opinion of the court.

Appellee, R. J. Smith, a resident of Amite county, on April 11, 1911, left Gloster for New Orleans on a round trip excursion over the Yazoo & Mississippi Valley Railroad. On his way to New Orleans, and while in that city he was drinking. He was still under the influence of liquor when he started on his return trip to Gloster on April 13, 1911, and he continued drinking and was moving about on the train. According to his testimony, at about eight o'clock in the evening, when the train was just north of Burnside, Louisiana, he endeavored to go from one passenger coach to another over an open platfrom, and accidentally fell, or was in some manner pushed, off the train, which was then running at about thirty miles an hour. He sustained painful, though not serious, injuries. He sued the railroad company for thirty thousand dollars, and the jury returned a verdict in his favor for three hundred dollars. Upon the trial, appellee claimed that appellant company was negligent in failing to stop the train and go back for the purpose of finding and properly caring for him.

It appears from the testimony that the train had traveled some miles from the point where it was when appellee was first missed before it was definitely determined that he was not aboard. The conductor then declined to back his train, stating that it would endanger the lives of a large number of passengers; that it was impracticable to do so because of the distance and because it would be necessary for the flagman to walk at a certain space ahead of the train as it was being backed; and that the quickest way to reach and relieve appellee was to notify other trains following about where he had fallen. The train consisted of some seventeen or eighteen coaches and had a great many passengers; the number being estimated at one thousand. Notice was given through the chief train dispatcher, and instructions were telegraphed for all trains to look out for appellee.

Appellee does not contend in this appeal that his fall from the train was occasioned by any negligence on the part of the appellant's servants.

We do not see that the action of the conductor in declining, at the time and under the circumstances, to stop and back his train amounted to negligence. It is the duty of the servants of a railroad company to do all they reasonably can to relieve the injury of a passenger after an accident. This rule in its application must be controlled by the facts in each particular case.

Considering all of the facts and circumstances of this case, and bearing in mind the necessity of safely operating the excursion train of many coaches and with a large number of passengers, we are satisfied that the servants of appellant did not fail in their duty toward appellee, but that they did what they reasonably could for his relief.

The facts make this a very different case from that of *Railroad Co.* v. *Byrd,* 89 Miss. 308, 42 So. 286, and the rule therein announced that the railroad company would be liable to a passenger who fell or was thrown from a train through his own negligence, for damages because of the neglect of the company to give such passenger attention after the accident, will not apply to this case.

The peremptory instruction asked by appellant should have been given.

Reversed, and judgment here for appellant.

*Reversed.*